IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| PETER and ILZE THOMPSON, | Cause No. CV-10-27-BLG-RFC |
| Plaintiffs, | **ORDER** |
| vs. | |
| DAVID COULTER, SUSAN COULTER WEEKS, d/b/a THE CW BAR RANCH, a Montana Partnership, | |
| Defendants. | |

Plaintiffs Peter and Ilze Thompson allege eight causes of action, including breach of contract, fraud in the inducement, negligence, and wrongful discharge, against Defendants David Coulter, Susan Coulter Weeks, and the CW Bar Ranch, a Montana Limited Liability Company. All of the claims relate to the termination of Peter Thomspon's employment at the CW Bar Ranch in Sweetgrass County, Montana. Suit was initially filed in Montana's Sixteenth Judicial District, Sweetgrass County, but was subsequently removed to this Court on the basis of diversity jurisdiction. Presently before the Court is Plaintiffs' Motion for Remand. *Doc. 13*.

1

The removal statute is construed strictly against removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Accordingly, any doubt about the propriety of removal requires remand. *Id.* This strong presumption against removal places the burden of establishing removal jurisdiction on the defendant. *Id.*

Defendants removed on the basis of diversity of citizenship. Accordingly, removal was proper if there was complete diversity of citizenship–that is, if each of the plaintiffs is a citizen of a different state than each of the defendants–and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332; *Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067 (9th Cir. 2001). Like a partnership, an LLC is a citizen of every state in which its owners/members are citizens of. *Johnson v. Columbia Properties Anchorage*, LP, 437 F.3d 894, 899 (9th Cir. 2006). Since there is no question that Defendant David Coulter is a citizen of California and Plaintiffs are citizens of Montana, the issue is whether Defendants have met their burden of proving that (1) Susan Weeks is a citizen of California and (2) the amount in controversy exceeds $75,000.

### A.     Susan Weeks is a citizen of California

To demonstrate citizenship for diversity purposes, a party must (a) be a citizen of the United States, and (b) be domiciled in a state of the United States. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986). A person is "domiciled" where

2

she has established a "fixed habitation or abode in a particular place, and intends to remain there permanently or indefinitely." *Lew,* 797 F.2d at 749-50 (*internal quotations omitted*). For purposes of diversity jurisdiction, domicile is determined at the time suit was filed. *Lew,* 797 F.2d at 750. A person's old domicile is not lost until a new one is acquired. *Id.* A change in domicile occurs at the confluence of a physical presence at the new location and an intention to remain there indefinitely. *Id.*

Courts have identified several factors to consider when determining domicile: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes. *Id.* No one factor is determinative. *Id.*

In this case, Defendants, through the affidavit of Susan Weeks, have established the following facts:

(1) Weeks moved from New York to San Francisco, California in late 2004, where she has her principal residence and intends to stay;

(2) she spends only 6 to 12 weeks per year at the CW Bar Ranch in Montana and the rest of the time in California;

(3) she has filed her state income tax returns in California since 2005 and

      has never filed in Montana;

(4)     she is registered to vote in California, votes in California, and has never registered to vote nor voted in Montana;

(5)     she has her personal bank accounts in California, but the CW Bar Ranch has a bank account in Montana; and

(6)     she and her husband have three vehicles licensed in California, but there are CW Bar ranch vehicles licensed in Montana.

*Aff. Susan Weeks (Apr. 28, 2010); Doc. 20-1.*

Plaintiffs counter that Ms. Weeks has a Montana Driver's license and had a Montana concealed weapon permit from 1999-2004. With respect to the driver's license, Weeks claims that in 1999 she lived in New York City, where she rarely drove, but had a house in Livingston, Montana. *Aff. Susan Weeks, ¶ 10.* She bought a truck in Livingston and was told she needed a Montana driver's license in order to insure the truck. *Id.* Although she acquired a Montana driver's license at that time, and apparently still maintains a Montana driver's license, Weeks avers that she did not change her legal residence to Montana at that time and did not intend to. *Id.* As to the concealed weapons permit, Weeks claims that she attended a hand gun safety course in 1999 at the invitation of a friend and that she received a concealed weapons permit at the conclusion of the class. *Aff. Susan Weeks, ¶ 9.* The permit expired in 2004 and she has not renewed it. *Id.*

4

Considering these circumstances, the only conclusion is that Weeks is domiciled in California. The concealed weapons permit is irrelevant since it expired years before suit was filed and domicile is determined at the time suit was filed. *Lew,* 797 F.2d at 750. Moreover, although the Montana driver's license is significant, it is really the only factor, other than her part ownership of the CW Bar Ranch, that weighs in favor of Montana residency. The driver's license certainly does not outweigh the fact that she lives at least 3/4 of the year in California, pays taxes and votes there, and maintains her personal bank accounts there. Plaintiffs ask the Court to judicially estop Weeks from claiming California residency since she would have had to claim Montana residency in order to get a Montana driver's license, but absent any authority for estoppel in such circumstances, the Court declines to do so. Contrary to Plaintiffs assertions, this is not the type of "gray area case" that must be remanded because there was doubt about removal in the first instance. *See Gaus,* 980 F.2d at 566.

**B.     The Amount in Controversy Exceeds $75,000**

Where, as here, the plaintiff does not request a specific amount of damages, a defendant seeking removal must prove by a preponderance of the evidence that the amount in controversy exceeds the statutory requirement, currently $75,000. *Lowdermilk v. U.S. Bank National Ass'n*, 479 F.3d 994, 998 (9th Cir. 2004).

Plaintiffs argue that remand is require in this case because Defendants removal petition merely recites the "magical incantation" that "there is more than $75,000 in dispute," *citing Gaus,* 372 F.2d at 567 (removing defendant bears the burden of setting forth, in the removal petition itself, the underlying facts supporting its assertion that the amount in controversy exceeds the jurisdictional requirement). Although *Gaus* could be read to impose such a formulaic requirement for the removal petition, the court was clear that the defendant had "offered no facts whatsoever to support the court's exercise of jurisdiction." 980 F.2d at 567.

Further, Plaintiffs did not submit, and this Court could not find, any other cases ordering or affirming remand solely because of bare recitals as to the amount in controversy in the removal petition.  In fact, the Ninth Circuit has affirmed the denial of remand in a case where (1) the complaint did not request damages in excess of the jurisdictional requirement, (2) the notice of removal stated only that the amount in controversy exceeded that amount, (3) the defendant submitted declarations showing the amount in controversy exceeded the minimum, and (4) the plaintiff did not dispute the amount in controversy, but had sought remand to avoid a situation like *Gaus*, where the Ninth Circuit remanded sua sponte after the case was litigated to a judgment in the district court.  *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 374-76 (9th Cir. 1997).  Accordingly, this Court declines to

remand solely because of defects in the removal petition.  The issue then becomes whether Defendants have met their burden of proving that the amount in controversy exceeds $75,000.

Although it has not specified the types of evidence a defendant may rely upon, courts may consider the facts presented in the removal petition as well as any summary-judgment-type evidence as to the amount in controversy at the time of removal.  *Valdez v. Allstate Ins. Co.,* 372 F.3d 1115, 1117 (9th Cir. 2004).  In *Cohn v. Petsmart, Inc.*, the court held that a letter stating the amount necessary to settle a case can be relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the claim, especially where the plaintiff does not later disavow the demand as inflated or present contrary evidence. *,* 281 F.3d 837, 840 (9th Cir. 2002).

Here, Defendants cite an email from Thompson, sent approximately one month before he filed suit, stating that if his case went to court he would seek lost wages until his retirement, meaning thirty more years of wages based on his annual earnings of over $95,000.00, plus 35% to 40% legal fees.  Aff. Susan Weeks, ¶¶ 11-12.  This is consistent with the Amended Complaint, operative at the time of removal, which, inter alia, seeks damages for breach of an employment contract that is alleged to have lasted as long as Defendants own the CW Bar Ranch.  *Doc. 1, Ex.*

*B.*  Finally, the seven other causes of action seek damages for emotional distress and punitive damages.

Although Plaintiffs' reply brief attempts to disavow the damages claimed in the email, the fact that Peter Thompson earned over $95,000.00 in 2007, combined with the causes of action alleged, compels the conclusion that at least $75,000 is at issue in this case.  Accordingly, Plaintiffs Motion for Remand must be denied.

**SO ORDERED.**

Dated this 13th day of July 2010.

*_/s/ Richard F. Cebull_____*
Richard F. Cebull
United States District Judge