John G. Crist
Crist, Krogh & Nord, LLC
2708 First Avenue North, Suite 300
Billings, MT  59101
Telephone No.:  (406) 255-0400
Facsimile No.: (406) 255-0697
Email:  jcrist@cristlaw.com

Robert L. Jovick
Attorney at Law
P.O. Box 1245
Livingston, MT  59047
Telephone No.: (406) 222-3065
Email:  leagle@imt.net

Attorneys for Defendants

UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| PETER and ILZE THOMPSON, ) | |
| ) | Case No. CV-10-27-BLG-RFC |
| Plaintiffs, ) | |
| vs. ) | |
| ) | |
| DAVID COULTER, SUSAN COULTER ) | **DEFENDANTS'** |
| WEEKS d/b/a THE CW BAR RANCH, ) | **STATEMENT OF** |
| a Montana Partnership, ) | **UNDISPUTED FACTS** |
| ) | **IN SUPPORT OF SECOND** |
| Defendants. ) | **MOTION FOR SUMMARY** |
| ) | **JUDGMENT** |

A.  **Facts Relevant to Emotional Distress Claim.**

1. Peter and Ilze Thompson have submitted an Expert Witness Disclosure from Kathleen Cullen-Mielnik, a licensed clinical professional counselor. Cullen-Mielnik Deposition, p. 11, line 9-24; Deposition Exhibit 38.

2. In her report, Ms. Cullen-Mielnik states that:

> <u>As a result of his [Peter's] abrupt termination</u> the parties have experienced severe distress including serious financial difficulties, marital and family distress and tension, health difficulties resulting from the stress and resulting emotional distress.

(Emphasis added). Deposition Exhibit 38. In her deposition, she confirmed that this statement accurately summarized the distress the Thompsons were experiencing and what was causing that distress. Cullen-Mielnik Deposition, p. 39, line 12-15; Deposition Exhibit 38.

3. Peter Thompson confirmed in his deposition that Ms. Cullen-Mielnik's statement concerning the cause and nature of his emotional distress was accurate.

> Q. A little ways down, I guess it's in the third paragraph, she says, "As a result of his [Peter's] abrupt termination, the parties have experienced severe distress, including serious financial difficulties, marital and family distress and tension health difficulties resulting from the stress and resulting emotional distress." Is that a true statement?

>A. Yes, it is.

P. Thompson Deposition, p. 140, line 4-12. He further confirmed that he would not have experienced any of the types of emotional distress described by Ms. Cullen-Mielnik but for the fact he was terminated.

>Q. And I take it it's your contention you wouldn't have experienced any of the types of distress described by Ms. Cullen but for the fact that you were terminated; is that your position?
>
>A. Yes, it is.

P. Thompson Deposition, p. 140, line 13-17.

4.  Ilze Thompson also confirmed in her deposition that Ms. Cullen-Mielnik's statement concerning the cause and nature of both her distress and her husband's emotional distress was accurate. I. Thompson Deposition, p. 17, line 8-24.

B.  **Facts Relevant to Statute of Limitations Issue**.

5.  Plaintiff Peter Thompson began working on the CW Bar Ranch on or about July 15, 2004. Pls.' Amend. Compl. ¶ 8; Docket #1, Exhibit "B".

6.  In late September of 2007, Thompson and Susan Coulter had a conversation. Thompson contends that, during that conversation, she advised him that she was replacing him within three months time. P. Thompson Deposition, p. 152, line 7-23.

7. After this conversation, Thompson assisted the Coulters in hiring his replacement by preparing interview questions and a ranking of the applicants for his position. P. Thompson Deposition, p. 164, line 21 to p. 165, line 16; p. 166. line 24 to p. 170. line 22; Deposition Exhibits 39 and 41.

8. On November 28, 2007 Thompson sent David Coulter an email requesting that he be allowed to remain employed for two more months. David Coulter responded that working in January was fine, but they would have to discuss February with Susan. P. Thompson Deposition, p. 179, line 24 to 181, line 2; Deposition Exhibit 45.

9. In 2008, Ayco Company performed certain accounting services for the Coulters, including the processing of pay checks for Peter Thompson. Second C. Judge Affidavit, ¶ 2. On January 2, 2008, Susan Coulter contacted Ayco by email and stated, with respect to Thompson, "We need to come up with a figure for a Thank You and Goodbye payment for month end". Exhibit "1" to S. Coulter Affidavit (March 15, 2011), p. 14.

10. On January 7, 2008, Susan Coulter inquired of Ayco whether it was appropriate to pay Thompson a "cash gift" for his "final payment". She was told it was not advisable. Exhibit "1" to S. Coulter Affidavit (March 15, 2011), p. 13.

11. On January 25, 2007, Susan Coulter sent her accountant an email stating that "Peter's last day is January 31st." She also stated Peter "would be happy to continue thru the end of Feb", but that his replacement was "more than set to go". Exhibit "1" to S. Coulter Affidavit (March 15, 2011), p. 11.

12. On January 31, 2008, Thompson spoke to Susan Coulter. She advised him that he did not have to "come in next month". She said Thompson would get pay for February 2008, but he did "not have to come out to the ranch". P. Thompson Affidavit, ¶ 81. (Docket #17).

13. On February 1, 2008, Susan Coulter contacted her accountant to confirm that Thompson was wired "TWO transfers – one for month end, one severance, right?" Exhibit "1" to S. Coulter Affidavit (March 15, 2011), p. 4.

14. In an email exchange with her accountant, Susan Coulter's accountant asked, "What would you like us to title the second payment (bonus, closing bonus, severance payment)?" Susan Coulter told the accountant that the second payment to Peter Thompson was a "Closing Bonus." Exhibit "1" to S. Coulter Affidavit (March 15, 2011), pp. 1-3.

15. Thompson's last pay check was deposited in his account on February 4, 2008. As set forth on the pay stub, the last pay period on this last check was "01/18/2008 – 01/31/2008". He also received a "Closing Bonus" of $6,250.00.

Affidavit of Charles W. Judge, and Exhibit "1" (Docket #5); P. Thompson Deposition, p. 183, line 3 to 184, line 3; Deposition Exhibit 47.

16. Thompson's gross YTD (year to date) pay as stated on his February 4, 2008 pay stub was $14,290.91. Deposition Exhibit 47. Thompson's 2008 W-2 from the Defendants states his total gross pay for all of 2008 was $14,290.91. Deposition Exhibit 48.

17. Thompson admitted that the last pay of any sort from the Defendants was the salary and closing bonus he received for the pay period ending January 31, 2008. P. Thompson Deposition, p. 184, line 15 to 185, line 5; Deposition Exhibit 47.

18. Thompson did not go out to the CW Bar Ranch at all in February of 2008. P. Thompson Deposition, p. 196, line 15-17.

19. During his employment with the Defendants, Thompson routinely submitted time records to Ayco which were used by Ayco to process his paychecks. The last date for which Thompson submitted any time record was for January 31, 2008. The email with which he transmitted the January 31, 2008 time card included a note to Corrine Gileski, one of the Ayco accountants, stating, "It has been a great pleasure working with you". Second Affidavit of Charles W. Judge, ¶2 and Exhibit "1', attached thereto.

20. Thompson did not submit any time records for any work in February of 2008. Second Affidavit of Charles W. Judge, ¶3

21. Thompson completed an on-line application to seek unemployment compensation from the Unemployment Division of the Montana Department of Labor & Industry. P. Thompson Deposition, p. 43, line 9 – 16. The State of Montana sent Ayco a Notice of Potential Benefit Charge from the Unemployment Division of the Montana Department of Labor & Industry concerning Thompson. Deposition Exhibit 23. That Notice contained the statement, "The claimant states they were employed with your firm for 07/15/2004 to 2/20/2008 and separated from employment because of a voluntary quit or discharge". Id.

22. Thompson completed a Claimant's Separation Statement in connection with his unemployment compensation claim. That statement stated that his "End Date" was 02/20/2008. P. Thompson Deposition, p. 256, line 6 to p. 257, line 12.

23. Thompson speculated in his deposition that the date "02/20/2008" might have been a mistake and that "2" (indicating February) "maybe" should have been a "3" to indicate March. P. Thompson Deposition, p. 44, line 25 to p. 45, line 16. Thompson received unemployment compensation benefits as a result of the claim documents he filed. P. Thompson Deposition, p. 223, line 20-25.

DATED this 17th day of March, 2011.

CRIST, KROGH & NORD, LLC

By: /s/ John G. Crist
John G. Crist

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of March, 2011, a copy of the foregoing **Defendants' Statement of Undisputed Facts in Support of Second Motion for Summary Judgment** was served on the following interested parties, by the means indicated:

```
  1, 2      CM/ECF
  _____     Hand-Delivery
  _____     U.S. Mail
  _____     Overnight Delivery Service
  _____     Facsimile
  _____     Email
```

1. Clerk, U.S. District Court

2. Douglas W. Marshall
   Marshall Law Firm, P.C.
   108 South Church Avenue
   Bozeman, MT 59715

CRIST, KROGH & NORD, LLC

By: /s/ John G. Crist
John G. Crist
Attorneys for Defendants